In re GIBCO, INC., Debtor.

Paul Quinn, Trustee, Plaintiff,

v.

Hepburn Ingham, Jr., aka Hepburn Ingham, II, et al., Defendants.

No. Civ.A. 97–S–1092.
Bankruptcy No. 95–10924 PAC.
Adversary No. 97–1190 PAC.

United States District Court,
D. Colorado.

Dec. 9, 1997.

## ORDER

SCHLATTER, United States Magistrate Judge.

This matter is before the Court on the Motion to Compel filed by the Plaintiff. The Plaintiff seeks to compel Defendants Michael Lindsay (Lindsay), Cohen Brame & Smith (CBS), and Hepburn Ingham, Jr. (Ingham) to produce certain documents which these Defendants claim are protected by attorney-client privilege, or as attorney work product. The documents at issue are related to transfers of the debtor-corporation's interest in a parcel of real estate.

In this case, the bankruptcy Trustee asserts against Ingham claims of preferential transfer, fraudulent transfer, and breach of fiduciary duty to Gibco's creditors. The Trustee also asserts a claim against CBS and Lindsay for aiding and abetting Ingham's breach of fiduciary duty to Gibco's creditors. For the reasons discussed below, the Plaintiff's motion is granted in part and denied in part.

## FACTS

The Plaintiff, Paul Quinn, is the Trustee in bankruptcy for Gibco. From 1989 to 1994, Gibco was in the business of building and selling homes. Gibco had two principals, Peter Giblin and Defendant Hepburn Ingham, Jr. In 1993, Gibco began to experience financial difficulties, which led to the demise of Gibco by the end of 1994.

In early 1993, Gibco and its principals were sued by the purchasers of two Gibco homes. By mid–1993, Gibco's assets consisted of two parcels of real estate, Lots 9 and 12. Both lots were encumbered by a first deed of trust securing a construction loan to Gibco. Both of these loans were co-signed by Giblin and Ingham. During 1993, both lots became subject to second deeds of trust securing loans made to Ingham. The proceeds of these

loans were loaned to Gibco by Ingham. The loans to Gibco by Ingham were unsecured.

Gail and Diana Palmer were the plaintiffs in one of the lawsuits filed against Gibco in early 1993. Giblin also was named as a defendant in this suit. In about August 1993 Ingham was added as a third defendant in the Palmer case. In November 1993, trial in the Palmer case was set for May 16, 1994. The trial date later was continued. In November 1994, the trial was held and judgment was entered for the Palmers, and against Gibco and Giblin, for several hundred thousand dollars. Ingham was held not to be liable on the Palmers' claims. In the course of the Palmer litigation, Gibco and Giblin were represented by Defendant John Lobus. When Ingham was added as a defendant, he was represented by defendants CBS and Lindsay.

In August and October of 1993, when the trial date in the Palmer case was drawing near, Ingham obtained several new personal loans. The loans were secured by new deeds of trust on lots 9 and 12, which Ingham had Gibco execute. With the addition of these deeds of trust, the encumbrances on the lots exceeded their value. In February 1994, lot 9 was sold. The proceeds of that sale were used to pay off Ingham's personal loans which had been secured by lot 9.

On February 10, 1994, Ingham had Gibco transfer title to lot 12 to himself, via a quit claim deed. Ingham paid no consideration for the transfer, except for his assumption of the debt on the two deeds of trust encumbering the property. Ingham already was personally obligated on these loans. CBS/Lindsay, acting as counsel for Ingham, prepared the quit claim deed and a related agreement to be signed by Giblin, Ingham and Gibco. In September 1994, Ingham re-conveyed lot 12 to Gibco without consideration. On the same day, Ingham, acting for Gibco, re-transferred Gibco's title to lot 12 to a new purchaser. CBS prepared the documents to accomplish the re-transfer from Ingham to Gibco, and the Gibco board resolution to approve the transfer. Two months later, the Palmers obtained a judgment against Gibco. By this time, Gibco had no assets in its name.

The Trustee seeks three categories of documents related to the lot 12 transfer which the Defendants claim are privileged:

1) CBS/Lindsay's notes, memos, draft agreements and correspondence concerning the transfer of lot 12 to Ingham, and Ingham's re-transfer of lot 12 to Gibco;

2) CBS/Lindsay's notes and memos of communications between it and John Lobus, Terry McCrea, Jack Lacy and/ or Peter Giblin made while the Palmer case was pending;

3) CBS/ Lindsay's 1994 billing statements included by Ingham as a corporate expense on Gibco's 1994 income tax return.

## I. APPLICABILITY OF PRIVILEGES

■■■ A document is protected by the attorney client privilege if it reveals a communication between a client and an attorney, made in order to obtain or deliver legal assistance, that was intended to be treated as confidential. *See In re Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir.1983). A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential. *See, e.g., RTC v. Heiserman*, 151 F.R.D. 367, 373 (D.Colo.1993); FED. R.CIV.P. 26(b)(3). The parties dispute whether one or both of these privileges are applicable to the documents at issue here. A party asserting a privilege has the burden of establishing that the privilege is applicable. A party asserting waiver of a privilege has the burden of establishing the waiver.

### A. Lot 12 Documents

Ingham and CBS/Lindsay argue that documents prepared by CBS concerning the lot 12 transfer are protected by the work product privilege. They note that the transfer was undertaken while the Palmer case was pending, and that Ingham, Lindsay, and CBS anticipated that the Palmers would challenge any such transfer. Thus, they argue that CBS' notes, memos, draft agreements, and correspondence concerning the transfer of lot 12 from Gibco to Ingham were prepared in anticipation of litigation, and were intended to remain confidential.

Obviously, the first motive for preparation of the lot 12 documents was to accomplish the transfer of lot 12. Absent a desire to accomplish such a transfer, there would not have been any need for such documents. Understandably, the Defendants anticipated a challenge to the transfer, and may have taken steps to circumvent a challenge. In short, the documents likely were prepared with mixed purposes. When documents were prepared for mixed purposes, the work product privilege is available only if the primary motivating purpose was to assist in pending or impending litigation. *McEwen v. Digitran Systems, Inc.*, 155 F.R.D. 678, 682 (D.Ut.1994), citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985).

Here, it is clear that the primary motivation for creation of these materials was to arrange for the transfer of lot 12, not to litigate the Palmer case. The Defendants' anticipation, or fear, that the transfer would be challenged does not create a shield under which the documents can be concealed. CBS' and Lindsay's notes, memos, draft agreements concerning the lot 12 transfer are not shielded by the work product privilege. However, correspondence between CBS/Lindsay and Ingham concerning the lot 12 transfer is protected by the attorney client privilege.

## B. CBS/Lindsay Notes of Conversations

The Plaintiff seeks production of notes made by Lindsay or CBS concerning communications with various people, other than Ingham, during the pendency of the Palmer case. The conversations at issue were between CBS and: 1) John Lobus, Gibco's attorney in the Palmer case; 2) Terry McCrea, Gibco's accountant and tax preparer; 3) Jack Lacy, Gibco's loan officer at Bank One, and; 4) Peter Giblin, the other principal in Gibco. The Trustee argues that he none of the conversations were privileged as to Gibco because Gibco and the other defendants in the Palmer case were operating under a joint defense arrangement. Generally, communications between parties with their joint counsel, or under joint defense arrangements, are not privileged in a subsequent dispute between those parties.

Lindsay, CBS and Ingham argue that these notes are protected by the work product privilege. First, they deny the Trustee's assertion that Ingham had a joint defense arrangement with Gibco and/or Giblin in the Palmer case. Second, they argue that these notes were taken while preparing for trial in the Palmer case, and thus are work product. The notes in question are, in essence, notes of interviews of witnesses taken by Ingham's counsel in the course of defending the Palmer's claims against Ingham. Generally, such notes are attorney work product.

There is no clear indication in the record that Ingham and Gibco/Giblin were operating under a joint defense agreement in the Palmer case. It appears likely that they were cooperating to some extent in the Palmer case, but cooperation alone does not amount to a joint defense. Absent a joint defense arrangement between Gibco and Ingham, Gibco, via the Trustee, is not entitled to review the work product of Ingham's attorneys.

## C. Billing Statements

The parties agree that CBS' billing statements are not, for the most part, privileged. However, CBS and Ingham say they reserve the right to redact from the statements any entry which reflects the content of a privileged communication, such as an attorney-client communication or litigation strategy. Generally, information on an attorney's billing statement which shows the fee amount, the general nature of the services performed, and the case on which the services were performed is not privileged. *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129–30 (9th Cir.1992). However, billing statement entries which reflect the client's motive in seeking representation, litigation strategy, or the specific nature of services provided, such as researching particular areas of the law, are privileged. *Id.*

## II. WAIVER

The Trustee argues that, to the extent the documents at issue are shielded by the work product or attorney client privi-

leges, the Defendants have waived those privileges by asserting a good faith defense to the Trustee's fraudulent conveyance claim. Waiver of the attorney client or work product privileges can occur when the privilege holder asserts a claim or affirmative defense which puts the privileged matter directly at issue. See, e.g., *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862–64 (3rd Cir.1994); *FDIC v. Wise*, 139 F.R.D. 168, 170–72 (D.Colo.1991). Such a waiver most often is found when a party affirmatively relies on privileged matter in asserting a claim or affirmative defense. See, e.g., *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992) (claim that tax position was reasonable because based on advice of counsel puts advice at issue, and waives privilege).

### A. Ingham

Eleven U.S.C. § 548 permits a bankruptcy Trustee to avoid any transfer of a debtor's interest in property, made within one year of the bankruptcy petition, if the transfer was made with intent to hinder, delay or defraud creditors, and was made when the debtor was insolvent, or if the transfer caused the debtor to become insolvent. Under § 548(c), a transferee who takes for value and in good faith, may enforce the transfer to the extent value was given for the transfer. Good faith under § 548(c) has not been precisely defined.

The Trustee's fraudulent conveyance claim against Ingham, under 11 U.S.C. § 548(a)(1), asserts that the purpose for the transfer of lot 12 from Gibco to Ingham was to prevent lot 12 from being subject to claims and judgment liens by Gibco's creditors before the home being built on lot 12 could be completed and sold. The Trustee alleges that Gibco and Ingham intended for all proceeds from the sale of lot 12 to go to Bank One, in satisfaction of Ingham's personal debts to Bank One, which were secured by lot 12. The Trustee further alleges that the transfer from Gibco to Ingham deprived Gibco's creditors of an opportunity to require marshaling by Bank One. Presumably, marshaling would have required Bank One to recover from personal assets pledged by Ingham to secure the Bank One loans, rather than re-

covering from Lot 12, or the proceeds of the sale of lot 12.

To defend against this claim, Ingham asserts, pursuant to 11 U.S.C. § 548(c), that the transfer of lot 12 from Gibco to Ingham was made in good faith. Assertion of good faith under § 548(c) is an affirmative defense. The Trustee argues that assertion of this good faith defense amounts to a waiver of the attorney-client and work product privileges concerning the documents he seeks. The Trustee argues that if he is denied access to this information, then he cannot determine what information was known to and considered by the Defendants when the lot 12 transfer was being considered and was made.

The Defendants argue that the information known to Ingham and Lindsay/CBS at the time of the lot 12 transfer is not relevant to the § 548(c) good faith inquiry. Rather, they argue that good faith is to be determined objectively, without reference to the subjective intent or knowledge of the Defendants. The Defendants cite *Jobin v. McKay*, 84 F.3d 1330 (10th Cir.1996), in support of this contention. In *Jobin*, the court held that a lack of good faith can be established by showing that "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a diligent inquiry would have discovered the fraudulent purpose ..." *Id.*, at 1337, quoting *Jobin v. McKay*, 164 B.R. 657, 661 (D.Colo.1994). In *Jobin*, the recipient of the allegedly fraudulent transfer claimed he had acted in good faith because he had no actual, subjective knowledge of the debtor's fraudulent intent. However, the circumstances under which the transfer was accepted were very suspicious. The court concluded that the objective circumstances of the debtor, at the time of the transfer, would place a reasonable person on inquiry, and that a transfer under such circumstances was fraudulent, unless diligent inquiry would not have discovered the fraudulent purpose.

*Jobin* does establish that good faith under § 548(c) has an "objective component." *Id.* at 1335. However, the *Jobin* court indicated that good faith includes both objective and subjective components. "[T]he term includes not only 'honest belief, the absence of malice

and the absence of design to defraud or to seek an unconscionable advantage' but also 'freedom from knowledge of circumstances which ought to put the holder on inquiry.'" *Id.*, quoting Black's Law Dictionary at 693 (6th ed.1990). In short, *Jobin* did not remove subjective knowledge and intent from the definition of good faith. Rather, *Jobin* upheld the consideration of objective circumstances when a claimed lack of subjective knowledge and intent may have been achieved through neglect or lack of diligence.

Here, Ingham's subjective knowledge and intent in arranging the lot 12 transfer is directly relevant to a determination of the validity of his good faith affirmative defense. Whether Ingham had subjective good faith concerning the lot 12 transfer is, in large part, dependent on what he and his counsel knew about the circumstances surrounding the transfer, and the purposes they sought to serve by making the transfer. By asserting the affirmative defense of good faith, Ingham has put both the objective circumstances, and his subjective knowledge and intent at issue.

The record indicates that the documents at issue here likely are the most probative, if not the only, documentary evidence which would tend to show the information available to Ingham when the transfer was under consideration, and Ingham's motive for the transfer. If the Trustee is not permitted to review any of these documents, Ingham will be free to state his version of the facts surrounding the transfer of lot 12, while the Trustee will by left without any means to examine other evidence which would corroborate or contradict Ingham's statements on this issue. Thus, to the extent the documents at issue are relevant to determining Ingham's knowledge and intent with regard to the lot 12 transfer, he has waived the attorney client and work product privileges by asserting the affirmative defense of good faith.

### B. CBS/Lindsay

CBS and Lindsay note that they do not hold the attorney client privilege concerning the documents at issue. Ingham alone holds that privilege. However, CBS/Lindsay, as Ingham's attorneys, independently hold a work product privilege with regard to any materials which fall under that privilege. As discussed above, CBS/Lindsay's interview notes concerning the Palmer case are covered by the work product privilege. It is possible that some entries on their billing statements also may fall within this privilege.

CBS/Lindsay argue that, even if Ingham has waived the work product privilege by asserting good faith as a defense to the Trustee's § 548 claim, CBS/Lindsay have not waived their privilege because they have not asserted a good faith defense under § 548. The Trustee does not assert a § 548 claim against CBS/Lindsay. Rather, the Trustee alleges that CBS/Lindsay aided and abetted Ingham in breaching his fiduciary duty to Gibco's creditors when they assisted him in preparing the lot 12 transfer with the alleged purpose of defeating any recovery by Gibco's creditors. CBS and Lindsay deny that they aided Ingham with the purpose of defeating recovery by Gibco's creditors. CBS/Lindsay have asserted a laundry list of affirmative defenses to this claim, including a claim of good faith.

CBS/Lindsay argue that their general assertion of a good faith affirmative defense does not constitute an affirmative defense that can only be proved or disproved with the use of the interview notes. Thus, they argue that the work product privilege has not been waived with regard to these notes. The Trustee has not addressed the question of how these notes are relevant to proof or disproof of the good faith affirmative defense to the aiding and abetting breach of fiduciary duty claim. In short, CBS/Lindsay have sustained the burden of establishing that these notes are protected by the work product privilege. The Trustee, on the other hand, has not demonstrated that these notes are important or crucial to proof or disproof of CBS/Lindsay's good faith affirmative defense. The Trustee has not established sufficient cause to overcome CBS/Lindsay's claim of privilege.

### C. Billing Statements

The Trustee asserts that the Defendants have waived any privilege they may hold as to information in the billing statements be-

cause they have not specified the basis for a claim of privilege as to any specific entries on the billing statements. Failure to specify the particular basis for a claim of privilege could be construed as a waiver. However, in the context of this case, I conclude that fairness requires that CBS/Lindsay be given an opportunity to make specific claims of work product privilege as to entries in the billing statements. Aside from any such privileged information, the billing statements should be produced.

In sum, I conclude as follows:

1) CBS/Lindsay's notes, memos, draft agreements and correspondence concerning the transfer of lot 12 to Ingham, and Ingham's re-transfer of lot 12 to Gibco, are not protected by the work product privilege. To the extent these documents contain communications between CBS/Lindsay and Ingham, they likely are protected by the attorney client privilege. However, by asserting the affirmative defense of good faith in response to the Trustee's § 548 claim, Ingham has waived the attorney client privilege as to these documents. These documents must be produced.

2) Notes made by CBS/Lindsay documenting communications between CBS/Lindsay and John Lobus, Terry McCrea, Jack Lacy and/ or Peter Giblin, made as part of the effort to defend Ingham against the Palmer's claims, are protected by the work product privilege. Ingham has waived the work product privilege as to these documents, but it has not been demonstrated that CBS/Lindsay have waived the work product privilege. The Court will not order that these documents be produced.

3) CBS/Lindsay's billing statements generally are not privileged. It is conceivable that there is some privileged information in these statements, but CBS/Lindsay have not specified which entries may be privileged. Ingham has waived his privileges as to these documents, to the extent they are relevant to his knowledge and intent concerning the lot 12 transfer. However, to the extent the billing statements contain information which falls within CBS/Lindsay's work product privilege, the statements are protected. CBS/Lindsay shall be given a short time within which to specify which entries they claim are protected by the work product privilege.

THEREFORE IT IS ORDERED that:

1) The Trustee's motion to compel is GRANTED as to CBS/Lindsay's notes, memos, draft agreements and correspondence for Ingham's transfer of Gibco's lot 12 to himself, and for Ingham's re-transfer of lot 12 to Gibco. The Defendants shall produce these documents to the Trustee on or before December 23, 1997.

2) The Trustee's motion to compel is DENIED as to CBS/Lindsay's notes and memos of communications between it and John Lobus, Terry McCrea, Jack Lacy and/ or Peter Giblin taken in preparation for the Palmer litigation.

3) The Trustee's motion to compel is GRANTED as to CBS/Lindsay's billing statements, on the following terms. On or before December 23, 1997, CBS/Lindsay shall produce the billing statements sought by the Trustee. To the extent CBS/Lindsay redact any entries, they shall produce a log stating the basis upon which the redactions are made. Absent timely production of such a log, the Court will conclude that CBS/Lindsay have waived the work product privilege as to their billing statements.

4) The Defendants' request for a hearing, and in camera review of documents, is DENIED. To the extent practicable, the parties are directed to resolve any remaining issues between themselves, in accordance with my conclusions in this Order. To the extent there remain unresolved issues, the parties may again request a hearing and/or in camera review.