[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-12073
Non-Argument Calendar

_____

D. C. Docket No. 01-01601-CV-SLB

DANNY JOE BRADLEY,

Plaintiff-Appellant,

versus

TROY KING, Attorney General for the
State of Alabama, in his official capacity,
J C UPSHAW DOWNS, MD, Director and Chief
Medical Examiner, Alabama Department of
Forensic Sciences-Headquarters, Auburn, AL,
in his official capacity,
JOE HUBBARD, District Attorney for Calhoun
County,
DISTRICT ATTORNEY OFFICE FOR CALHOUN COUNTY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 3, 2009)

Before EDMONDSON, Chief Judge, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

Plaintiff-appellant Danny Joe Bradley ("Bradley"), an Alabama death row inmate, is scheduled for execution on 12 February 2009. He appeals the district court's order dismissing his 42 U.S.C. § 1983 claims to compel the Defendants-appellees ("Appellees") to produce evidence for DNA testing. Bradley also requests a stay of execution in order to permit resolution of this appeal. For the following reasons, we AFFIRM the judgment of the district court and DENY Bradley's motion for a stay of execution as moot.

## I. BACKGROUND

Bradley was convicted and sentenced to death in 1983 for the capital murder committed during the rape and sodomy of his twelve-year-old stepdaughter, Rhonda Hardin. See Bradley v. State, 494 So. 2d 750, 752 (Ala. Crim. App. 1985). His subsequent state and federal post-conviction proceedings ended in 2001 and are summarized in Bradley v. Pryor, 305 F.3d 1287, 1288 (11th Cir. 2002). See also Bradley v. Nagle, 531 U.S. 1128, 121 S. Ct. 886 (2001) (denying certiorari on his federal habeas corpus petition).

In June 2001, after the Alabama Supreme Court set Bradley's first execution date, he filed this § 1983 action seeking physical and biological evidence for DNA

2

testing. R1-1. He also filed a motion for stay of execution in the Alabama Supreme Court, which was granted. See Bradley, 305 F.3d at 1289 n.2. In his § 1983 suit, Bradley requested the rape kit evidence from the victim's autopsy consisting of the victim's vaginal, rectal, and oral swabs, substance smears, and gastric juices; the victim's pants; and hair evidence. R1-1 at 16. Prior to his filing suit, the Alabama Attorney General's Office had notified Bradley that it could not find the rape kit or the victim's pants but it offered for DNA testing two bedding items introduced at trial that contained stains of spermatoza, fecal matter, and semen. R1-1, Exh. B. at 1, 4; see Bradley v. Nagle, 212 F.3d 559, 563 (11th Cir. 2000).

The district court initially dismissed the § 1983 suit "as a second or successive habeas petition filed without the requisite authorization from the Court of Appeals." Bradley, 305 F.3d at 1288. We reversed and remanded on grounds that Bradley's success in the § 1983 action would "not demonstrate the invalidity of his conviction or sentence." Id. at 1290. Because Bradley's suit sought only the production of evidence, he prevailed "once he ha[d] access to that evidence or an accounting for its absence." Id.

On remand, the district court ordered the state parties to file a verified statement of "each piece of evidence capable of DNA testing and whether the

3

evidence is available for testing." R1-34 at 2. They also had to account for any evidence that was unavailable by stating their efforts to locate the evidence and the ultimate disposition of that evidence. Furthermore, the court granted discovery to test the state's assertion that certain evidence had been lost. Bradley was allowed to depose the director of the Alabama Department of Forensic Sciences ("DFS"), Taylor Noggle, as well as the current and former District Attorneys for Calhoun County, Joseph Hubbard and Robert Field. Both Noggle and Hubbard were unable to find the rape kit or the victim's pants despite searches of their offices, the Piedmont Police Department, and the Circuit Clerk's office. R3-48, Deposition of Taylor Noggle at 55-56, 62; Deposition of Joseph Hubbard at 17, 21-23. Robert Field, the district attorney who prosecuted Bradley, testified that his office would not ordinarily retain items testified about at trial. R3-48, Deposition of Robert Field at 29.

Bradley was also scheduled to depose Faye Ogletree, a forensic scientist who testified at his 1983 trial that she found semen and sperm on swabs of the victim's rectum, mouth, and stomach, and that the victim's pants had a stain containing fecal matter, semen, and spermatoza. R1-39; R3-13, Exh. 1 at Exh. B, Trial Transcript, pp. 247, 264-65. Due to health problems, Ogletree instead submitted a sworn affidavit stating she had no idea where the missing items were

4

presently located or if they had been destroyed. R2-43, Affidavit of Faye Ogletree at 1. Ogletree, who is currently seventy-one years old, attached two letters from her doctors attesting to her inability to be deposed or testify in court. Id. at 4-5.

Although the Appellees were unable to locate the rape kit or the victim's pants, DNA testing performed on the two bedding items introduced at trial implicated Bradley. In July 2001, the state submitted a report by a forensic scientist, Larry Huyes, finding that the fecal matter and semen stains on a white blanket matched the genetic markers of Bradley and the victim. R1-16 at 9. These findings were consistent with the September 2001 report of Dr. Edward Blake, Bradley's hand-picked expert. R3-49 at 9-10. Dr. Blake found that Bradley could not be eliminated as the source of the spermatoza on a white blanket and a red, white and blue sheet, and that Rhonda Hardin could not be eliminated as the source of the female DNA commingled with the spermatoza on the blanket. Id. at 9-11. Dr. Blake explained that "it is unlikely that more than one human being has ever possessed this particular genotype array." Id. at 9. Although Dr. Blake also tested the victim's pubic hairs and fingernail scrapings, he found no significant debris. Id. at 4-5.

The district court found that Bradley had a constitutionally protected interest in his life but that the due process protection of that interest was diminished by his

5

conviction. R2-51 at 5-6. The court noted that Bradley had been allowed to conduct discovery to determine the location of the requested evidence and that the available evidence which had been tested did not exonerate him. Id. at 6-7. With respect to Bradley's request for further discovery to depose Faye Ogletree, the district court found "good cause for not submitting an older woman in poor health to questioning about incidents that happened over twenty-five years ago and more than twenty years after she left DFS." Id. at 8. Additionally, the court reasoned that even if Ogletree could recall where the evidence was kept when she left the DFS, this would not reveal its current location. This was especially true given that numerous people had already searched the only places where the evidence could be, including the DFS labs, the police department, the District Attorney's Office, and the state courthouse. Id.

The district court concluded that Bradley's due process rights under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), had not been violated based on our decision in Grayson v. King, 460 F.3d 1328 (11th Cir. 2006). In Grayson, we left open "the possibility that a § 1983 plaintiff could, under some extraordinary circumstances, be entitled to post-conviction access to biological evidence for the purpose of performing DNA testing." Grayson, 460 F.3d at 1339. The district court found that Bradley's case, like Grayson's, did not present extraordinary

6

circumstances given that the evidence Bradley seeks is no longer available, he had a fair trial, evidence of his guilt was strong, it is highly unlikely that the evidence he seeks would be exculpatory, and he failed to show the evidence was material to his guilt or punishment. R2-51 at 9-10.

Additionally, the district court determined that Bradley's due process rights were not violated under Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333 (1988), because the state did not act in bad faith in failing to preserve the evidence. R2-51 at 10-12; see Youngblood, 488 U.S. at 58, 109 S. Ct. at 337 (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). The district court ultimately concluded that even "assuming plaintiff enjoys a substantive or procedural due process right to the relief he seeks, the court finds that plaintiff has received all the process to which he may be entitled and his claims are now due to be dismissed." R2-51 at 12.

Bradley filed his notice of appeal in April 2007. R2-53. He contends the district court abused its discretion in denying further discovery and in preventing him from deposing Faye Ogletree. Bradley also argues that the district court misconstrued and improperly relied upon Grayson in dismissing his § 1983 claims. On 3 December 2008, the Alabama Supreme Court set an execution date for 12

7

February 2009. At no time has Bradley sought expedited treatment of his appeal. Instead, he filed on 8 January 2009 an emergency motion to stay his execution pending resolution of this appeal.

## II. DISCUSSION

We review a district court's decision to deny equitable relief for abuse of discretion. See Arthur v. King, 500 F.3d 1335, 1339 (11th Cir. 2007) (per curiam). A district court's underlying legal conclusions are reviewed de novo and its factual findings for clear error. See id. A district court has wide discretion in discovery matters and our review is "accordingly deferential." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998). A court abuses its discretion if it makes a "clear error of judgment" or applies an incorrect legal standard. Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1055 (11th Cir. 2008) (per curiam). Moreover, a district court's denial of additional discovery must result in substantial harm to a party's case in order to establish an abuse of discretion. See Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1219 (11th Cir. 2000).

A plaintiff seeking post-conviction access to DNA evidence in a § 1983 action must show that denial of such access "deprived him of a federally protected right." Grayson, 460 F.3d at 1336. Grayson failed to demonstrate a constitutional right under Brady because the evidence he sought was available prior to trial, he

8

received a fair trial, and there was no reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to him at trial. Grayson, 460 F.3d at 1339-40. Furthermore, Grayson failed to establish a due process right under Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893 (1976). Assuming that Grayson had a liberty interest under the due process clause, this interest was outweighed by (1) the slight probable value of obtaining DNA access (because the results of a DNA test relating to a rape would not exculpate Grayson of the capital murder during a burglary and the non-biological evidence against him was overwhelming) and (2) the government's strong interest in the finality of a duly adjudicated judgment. Grayson, 460 F.3d at 1341-42.

The district court correctly applied Grayson in determining that there are no extraordinary circumstances in Bradley's case entitling him to further post-conviction access to DNA evidence. Although the rape kit results and the victim's pants are now missing, these items were available prior to trial. Bradley's post-conviction attacks establish that his trial was fair and there was substantial non-biological evidence of his guilt. See Bradley, 212 F.3d at 568-69 (reviewing evidence supporting jury's verdict). Nor can Bradley show a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to him at trial. Unlike Grayson, Bradley has asserted a

9

claim of actual innocence. Bradley's claim is severely undermined by the DNA testing on bedding items performed in 2001, however, which establish that the victim's DNA and Bradley's DNA were commingled on a blanket taken from his home. Given these results and the other evidence introduced at trial, the district court correctly concluded that it was "highly unlikely" the missing evidence he seeks to obtain would be exculpatory. R2-51 at 10. Accordingly, Bradley has failed to show that his due process rights were violated under Brady. See Grayson, 460 F.3d at 1339-40; Arthur, 500 F.3d at 1341-42 (inmate not entitled to post-conviction access to DNA evidence in a § 1983 action where the evidence was not suppressed at trial, the trial was fair, there was ample evidence linking him to the murder, and he could not establish that DNA testing would exonerate him of the murder).

Bradley has likewise not demonstrated a procedural due process violation under Mathews. The risk that he will be erroneously deprived of his potential liberty interest is small. All of his direct and collateral attacks on his conviction and sentence have proven unsuccessful and the post-conviction DNA testing on the bedding items leave little doubt as to his guilt. The value of additional DNA testing must also be weighed against the fact that the requested items, despite extensive searching, cannot be found. Finally, the state of Alabama and the

10

victim's family have a strong interest in enforcing a criminal judgment and sentence over twenty-five years old. See Jones v. Allen, 485 F.3d 635, 641 (11th Cir. 2007) (noting that every delay commutes a death sentence into a prison term).

Based on the foregoing, the district court did not abuse its discretion in denying further discovery or in preventing Bradley from deposing Faye Ogletree. Ogletree ceased working at the DFS in 1986 and stated in her sworn affidavit that "I don't have any idea" concerning the present whereabouts of the rape kit or the victim's pants. See R2-43, Affidavit of Faye Ogletree at 1. Although Taylor Noggle, the Director of the DFS, found no documentation that these items had been destroyed, he noted that the Birmingham laboratory had moved twice since 1983 and that "with each of those moves we would have tried to eliminate as much evidence as possible." R3-48, Affidavit of Taylor Noggle, at 45-46, 62-63. Noggle thus felt "very confident" that the evidence was no longer available. Id. at 63. Searches of the district attorney's offices, the Piedmont Police Department, and the Calhoun County Courthouse have also proven futile. The district court's finding that the loss of this evidence did not result from the Appellees' bad faith is not clearly erroneous. Bradley has consequently not shown that his case will be substantially harmed by the absence of additional discovery.

11

The Supreme Court's grant of certiorari in <u>Osborne v. Dist. Attorney's</u> <u>Office for the Third Judicial Dist.</u>, 521 F.3d 1118 (9th Cir. 2008), does not alter our decision in this case. See <u>Dist. Attorney's Office for the Third Judicial Dist. v.</u> <u>Osborne</u>, ___ U.S. ___, 129 S. Ct. 488 (2008). The Ninth Circuit held that Osborne's due process right prohibited the state from denying him reasonable access to readily available biological evidence for DNA testing in a § 1983 action. See <u>Osborne</u>, 521 F.3d at 1141-42. The state has not denied Bradley access to any available evidence, however. To the contrary, Appellees consented to DNA testing of all the evidence it could find and actively searched for any missing evidence. Thus, unlike Osborne (or Grayson, for that matter), Bradley was essentially granted the relief he requested. As the district court correctly concluded, Bradley "has received all the process to which he may be entitled and his claims are now due to be dismissed." R2-51 at 12.

### III. CONCLUSION

Bradley filed this § 1983 suit seeking access to biological and physical evidence that he hoped he could then use in a habeas proceeding to prove his innocence in the capital murder of his step-daughter. He received access to the evidence the Appellees had in their possession but the DNA testing of that evidence did not exculpate him. He has also received an accounting of the

12

requested items which the Appellees could not find, that of the rape kit and the victim's pants. There is no evidence of bad faith on the part of the state or that further discovery will unearth these missing items. Accordingly, the district court did not abuse its discretion in denying additional discovery and the district court's judgment of dismissal is AFFIRMED. Bradley's emergency motion for a stay of execution pending appeal is DENIED as moot.

BARKETT, Circuit Judge, specially concurring:

I agree with the majority's conclusion that dismissal of Bradley's 42 U.S.C. § 1983 action seeking access to evidence for DNA testing was appropriate because Bradley received the relief he originally requested. I do not believe that the majority's discussion of Grayson has any bearing on this case.

In his § 1983 action, Bradley prevailed "once he ha[d] access to that evidence or an accounting for its absence." Bradley v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002). Bradley received the two bedding items that the state had in its possession. The State has maintained that despite extensive searches it has been unable to locate the remaining two items requested, the rape kit and the victim's pants. Bradley was permitted to depose three state officials regarding their knowledge of the location and disposition of this evidence. In addition, he was provided with an affidavit from a seventy-one year old witness. None of these witnesses had any information that would lead to the discovery of this missing evidence, thus Bradley has received information pertaining to an "accounting for its absence." Id.

Moreover, I do not find that Grayson v. King, 460 F.3d 1328 (11th Cir. 2006) is applicable to the resolution of Bradley's § 1983 action. In Grayson, we

14

concluded nothing more than, under the particular circumstances of his case, Grayson had not shown an entitlement to post-conviction access to DNA testing. Id. at 1342 (emphasis added). We specifically declined to decide whether there could ever be such a right. Id. Although we stated that there may be some "extraordinary circumstances" under which a plaintiff could show entitlement to post-conviction access to DNA testing, we did not go so far as to describe what a defendant would need to show to establish this. Id. at 1339.

Furthermore, the facts relied on by this Court in Grayson in denying his quest for DNA evidence bear no similarity to Bradley's case. Grayson, who had been convicted for capital murder during a burglary, sought access to DNA testing of the victim's rape kit, which the State refused to release to him. Grayson, 460 F.3d at 1335. Grayson had admitted on direct and cross-examination at his trial that he had raped the victim, and did not contend that he was innocent of the crime of conviction, capital murder. Id. at 1333, 34, 39. Furthermore, we noted that "[t]he requested DNA tests, even if exculpatory, would simply indicate that a third man was involved and had raped [the victim] and would not exclude [the defendant's] involvement in the capital murder, much less definitively show his innocence." Id. at 1339. Given these facts, as well as Grayson's receipt of a fair

trial, we concluded that he had not shown a constitutional or federally protected right to the DNA evidence.  Id.

Unlike Grayson, who was denied access to evidence that would not exclude his involvement in the crime of conviction, Bradley has been provided with the relief that he requested in his § 1983 action that he asserts is pertinent to his claim of actual innocence.  He was able to perform DNA testing on the evidence that the State had in its possession, namely the bedding items.   He also received information from several state officials regarding their knowledge of the whereabouts of the other missing pieces of evidence.   There is simply no more available biological or physical evidence to provide to Bradley for DNA testing. Furthermore, he has not presented evidence of  bad faith on the part of the State in regard to the loss of the rape kit and victim's pants.

Accordingly, dismissal of his § 1983 action is appropriate because he obtained all of the relief that he sought, and not because Grayson has any bearing on whether he established a constitutional or federally protected right to that evidence.