IN RE: Frank Michael
MONGELLUZZI,
Debtor.

Angela Welch and Christine L.
Herendeen, as Chapter 7
Trustees, Plaintiffs,

v.

Regions Bank, Defendant.

Case No. 8:11–bk–01927–CED
Adv. Pro. No. 8:14–ap–653–CED

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed May 8, 2017

Caryl E. Delano, United States Bankruptcy Judge

Robert F. Elgidely, Genovese Joblove & Battista, P.A., Fort Lauderdale, FL, John H. Genovese, Genovese Joblove & Battista, P.A., Miami, FL, for Plaintiff Angela Welch.

Ashley Dillman Bruce, Berger Singerman, LLP, Fort Lauderdale, FL, James D. Gassenheimer, Berger Singerman, P.A., Miami, FL, for Plaintiff Christine Herendeen.

· D. Christopher Carson, Hanna Lahr, Burr & Forman, LLP, Birmingham, AL, Garry K. Grooms, Burr & Forman, LLP, Nashville, TN, Edmund S. Whitson, III, Burr & Forman, LLP, Tampa, FL, for Defendant.

## AMENDED [1] ORDER ON MOTION TO COMPEL PRODUCTION OF DEFENDANT'S PREPETITION ATTORNEY–CLIENT AND WORK–PRODUCT COMMUNICATIONS BASED UPON THE "AT ISSUE" DOCTRINE, OR IN THE ALTERNATIVE, MOTION TO REQUIRE DEFENDANT TO PRODUCE ALL COMMUNICATIONS CLAIMED TO BE PRIVILEGED FOR *IN CAMERA* INSPECTION AND DIRECTING REGIONS BANK TO PRODUCE DOCUMENTS

THIS PROCEEDING came on for hearing on November 1, 2016, November 15, 2016, December 13, 2016, March 9, 2017, and April 5, 2017, upon (i) *Plaintiff's Motion to Compel Production of Defendant's Pre–Petition Attorney–Client and Work Product Communications Based Upon the "At Issue" Doctrine or, in the Alternative, Motion to Require Defendant to Produce all Communications Claimed to be Privileged for* In Camera *Inspection* (Doc. No. 171) filed by Trustee, Angela Welch ("Trustee Welch"); (ii) the *Joinder* thereto (Doc. No. 182) filed by Trustee Christine Herendeen ("Trustee Herendeen" and, together with Trustee Welch, the "Trustees"); (iii) *Trustee Herendeen's Motion to Compel Regions Bank to Submit All Documents Listed on its Amended Privilege Log to the Court for in Camera Inspection and for Sanctions* (Doc. No. 238); and (iv) *Trustee Herendeen's First Motion to Compel* In Camera *Inspection of Documents Logged on the Defendant's Privilege Log* (Doc. No. 143, Adv. Pro No. 8:15–ap–00118–CED) (together, the "Motions to Compel").

The Court has carefully considered the Motions to Compel, the arguments of counsel, the documents reviewed by the Court *in camera,* and *Trustee Herendeen's Supplemental Memorandum of Law Regarding Oral Ruling Made at March 8, 2017 Hearing in Advance of Written Or-*

---

1. This Amended Order supersedes Doc. No. 295 and reflects this Court's ruling in the *Order Granting Trustee–Plaintiffs' Joint Mo-* tion for Clarification and Denying Regions' Motion to Extend Time to Appeal (Doc. No. 318).

der.[2] As the Court announced at the April 5, 2017 hearing, the Court finds that Regions Bank's good faith defense puts its knowledge and intent at issue. Therefore, the Court concludes that Regions Bank has waived the attorney-client and work-product privileges as to certain specific documents that evidence its state of mind during the relevant time period. Because these documents are most likely the most probative, if not the only, evidence of Regions Bank's state of mind, the Court finds that these specific documents, described below, are subject to production.

## BACKGROUND

### Debtors' Relationship with Regions Bank

Debtor, Frank Mongelluzzi, and his wife owned and operated over one hundred corporations. Between 2007 and 2010, Mr. Mongelluzzi and his related business entities (the "Entities") maintained 61 bank accounts (the "Accounts") at Regions Bank ("Regions"). The Mongelluzzis and the Entities also had a significant lending relationship with Regions, which included a Revolving Line of Credit (the "Regions' Revolver") and numerous other loans.

In 2009 and 2010 time period, Regions entered into at least 14 forbearance agreements with Mr. Mongelluzzi and the Entities. On or about July 1 and July 2, 2010, Regions froze or closed 43 Accounts belonging to Mr. Mongelluzzi and the Entities. On July 15, 2010, Regions set off roughly $12 million dollars against the obligations owed to it. The freezing of the Regions Accounts resulted in the incur-

rence of $15.2 million dollars in overdrafts in accounts that the Mongelluzzis and the Entities maintained at another bank, Synovus Bank.

### The Bankruptcy Cases and the Adversary Proceedings

On February 2, 2011, Frank Mongelluzzi filed a voluntary Chapter 11 petition for relief. On March 8, 2011, the case was converted to Chapter 7; Trustee Welch was appointed as the Chapter 7 trustee. On May 24, 2013, Trustee Welch filed voluntary Chapter 7 petitions for bankruptcy relief for sixteen of the Entities. Trustee Herendeen was appointed as the Chapter 7 trustee of the Debtor–Entities' estates.

In January 2014, Trustee Welch filed a complaint against Regions in the United States District Court, Middle District of Florida,[3] seeking to avoid alleged fraudulent and constructively fraudulent transfers under bankruptcy and state law.[4] The case was referred by the District Court to the Bankruptcy Court.[5]

Shortly thereafter, Trustee Herendeen filed 16 separate complaints against Regions in the Bankruptcy Court. On behalf of the Debtor–Entities, Trustee Herendeen seeks to avoid alleged fraudulent transfers and asserts claims for unjust enrichment, aiding and abetting breach of fiduciary duty, and recovery of property. Pursuant to agreement of the parties, the pending adversary proceedings have been consolidated for discovery and pre-trial matters only, under lead Adversary Proceeding No. 8:14–ap–653–CED.[6]

2. Doc. No. 288.

3. Case No. 8:14–cv–188–EAK–TGW.

4. 11 U.S.C. §§ 544, 548, and 550 and Florida Statutes §§ 726.105(a) and (b), 726.106(1), and 726.108.

5. District Court's *Order on Defendant's Motion to Enforce Standing Order of Reference* (Doc. No. 31).

6. Doc. No. 200.

In their respective complaints,[7] the Trustees allege that Mr. Mongelluzzi and the Entities were engaged in a massive check-kiting scheme; that Regions had knowledge of the scheme; and that Regions devised a controlled exit strategy in order to reduce its financial exposure. The Trustees contend that Regions, through its actions, including the set off of over $12 million, was able to reduce its financial exposure from over $25 million to only approximately $3 million.[8]

In Regions' answers to the complaints,[9] Regions denies the Trustees' material allegations and asserts its good faith. In its seventh affirmative defense, Regions alleges that the Trustees fail to state a claim upon which relief can be granted because it at all times acted in good faith and never exercised dominion or control over the funds held in the deposit accounts. Likewise, in its twelfth affirmative defense, Regions asserts that Trustees fail to state a claim upon which relief can be granted for constructive fraud because it took each transfer in good faith and gave reasonably equivalent value in exchange in the form of satisfaction of the debt owed by Debtors.[10]

### Facts That Are Known to the Trustees

On February 6, 2017, in connection with discovery issues involving the Board of Governors of the Federal Reserve System, the Trustees filed their Trustees' *Joint Case Summary* (the "Trustees' Summary").[11] In the Trustees' Summary, the Trustees provide information—presumably obtained through discovery conducted to date—regarding Regions' handling of the Accounts. The Trustees state:

(a) In the period 2007 through 2010, Regions had intimate and thorough knowledge of Debtors' insolvency and check-kiting scheme, and their intent to hinder, delay, or defraud creditors.

(b) Regions learned that Debtors were regularly issuing checks from their deposit accounts without sufficient available funds to cover them in order to take advantage of the float period in the check collection process.

(c) Debtors regularly obtained advances from the Regions Revolver in order to cover the checks before the float period expired.

(d) Regions regularly covered overdrafts in the Accounts in the period 2007 through 2010.

(e) Regions became suspicious of Debtors' use of the Regions Revolver in August 2009.

(f) Regions' suspicions were documented in specifically identified e-mail communications between Regions' executives between August and September 2009.

(g) In order to give itself time to implement a controlled exit strategy, Regions entered into 14 forbearance agreements with Debtors between October 9, 2009, and July 15, 2010.

(h) Regions changed the case management system for the Accounts of June 7, 2010.

(i) Regions froze/closed 33 accounts and revoked associated debit cards on July 1, 2010.

---

**7.** Doc. Nos. 1, 15, 156; Doc. No. 1 in Adv. Pro. No. 8:15–ap–118–CED.

**8.** Transcript, pp. 24–25, Doc. No. 209.

**9.** Doc. Nos. 59 and 160; Doc. No. 15 in Adv. Pro. No. 8:15–ap–118–CED.

**10.** *See* Doc. 59, pp. 17, 18; Doc. 160, pp. 24, 26.

**11.** Doc. No. 240.

(j) Regions froze/closed 10 additional accounts and revoked associated debit cards on July 2, 2010.

(k) On July 15, 2010, Mongelluzzis and some of the Entities executed a forbearance agreement that gave Regions greater rights than it possessed before the agreement was executed.

(*l*) On July 15, 2010, Regions set off specifically enumerated funds from non-obligor accounts in satisfaction of the Regions Revolver and other loans and effectuated other set offs totaling over $12 million.

(m) On October 5, 2010, Regions effectuated another set off in the amount of $632,590.43 from an account of Able Body Temporary Services, Inc., prior to closing the final account.[12]

### The Motions to Compel and the Court's In Camera Inspection

In September and October 2016, the Trustees filed the Motions to Compel. The Trustees contend that Regions improperly objected to producing certain documents on the basis of attorney-client and work-product privileges. The Trustees argue that Regions waived those privileges when it asserted a good faith defense to the Trustees' fraudulent transfer claims.

In November 2016, Trustee Herendeen filed her *First Motion to Compel* In Camera *Inspection of Documents Logged on the Defendant's Privilege Log.*[13] In this motion, Trustee Herendeen alleges that Regions improperly asserted the attorney-client privilege with respect to many documents that Regions listed on its Amended Privilege Log dated September 20, 2016, primarily consisting of copies of e-mail

communications. Trustee Herendeen asked this Court to compel Regions to produce the e-mails listed on the privilege log in which counsel is either copied as a recipient to the e-mail, included as a direct recipient of the e-mail together with other recipients, or was the author of an e-mail that was sent to various recipients to the Court for *in camera* review.[14]

At the conclusion of the December 13, 2016 hearing on the Motions to Compel, the Court entered its order granting in part and denying in party the Motions to Compel.[15] The Court denied the Motions to Compel without prejudice, subject to the Court's *in camera* review of the documents listed on Regions' Amended Privilege Log. On January 17, 2017, Regions provided documents to the Court for its *in camera* inspection, including documents from which asserted privileged information had been redacted On January 26, 2017, to facilitate the Court's review, Regions provided the Court with a set of the documents with the redactions highlighted to reflect the material that had been redacted.

### The Court's Initial Ruling on the Motions to Compel and Additional Submissions by the Parties

At the March 8, 2017 hearing, the Court orally announced its intended ruling on the Motions to Compel. The Court ruled that when Regions asserted the affirmative defense of good faith to the Trustees' avoidance claims, it placed its state of mind at issue. The Court held that under the "at issue" doctrine, Regions had waived the attorney-client and work-product privileges with respect to communications with

---

12. Doc. No. 156, p. 17.

13. Doc. No. 143 in Adv. Pro No. 8:15–ap–00118–CED.

14. Many documents in these categories have since been voluntarily produced by Regions to the Trustees.

15. Doc. No. 211.

its attorneys that evidenced its knowledge, motive, or intent during the relevant time period.

The Court further stated that after its review of hundreds of e-mails between Regions and its attorneys, the Court found that most of the e-mails did not reveal any knowledge, intent, or motive on the part of Regions or its attorneys, other than that which can easily be inferred from the Trustees' own timeline of events as outlined in the Trustees' Summary.[16] The Court then directed counsel for Regions to provide to the Court for *in camera* inspection certain documents that had not been provided to the Court, but which were referenced in a reviewed document.[17]

Upon concluding its oral ruling, the Court provided counsel for the parties with the opportunity to comment. After consideration of the comments of counsel for Trustee Welch, the Court took the Motions to Compel under further advisement for the purpose of re-reviewing certain documents provided by Regions, as well as the additional documents the Court had requested from Regions.[18]

On March 27, 2017, as directed by the Court on March 8, 2017, Regions provided the Court with two additional documents for *in camera* review.[19] In addition, on March 28, 2017, Regions provided the Court with its *Supplemental* In Camera *Submission of Privileged Documents* (the "Supplemental Submission"). In its cover letter to the Court,[20] Regions' counsel stated they had discovered 153 documents that were listed as privileged on its Amended Privilege Log dated September 20, 2016, but which had been "inadvertently omit-

ted" from inclusion in the documents submitted for *in camera* review on January 17, 2017.

On April 3, 2017, although not requested or directed by the Court, Trustee Herendeen filed her *Supplemental Memorandum of Law Regarding Oral Ruling Made at March 8, 2017 Hearing in Advance of Written Order* (the "Supplemental Memorandum").[21] In the Supplemental Memorandum, Trustee Herendeen argues that:

> Once the Court determined that the attorney-client and work product privileges had been waived, that should have ended the judicial inquiry. It is not for the Court to tell Trustee how to try her case, including which documents will or won't be helpful in proving up her case-in-chief, or rebutting Region Bank's "good faith' defense. The Trustee submits that the Court's written order should direct that every document it reviewed *in camera*, subject only to possible redactions discussed on the record at the March 8, 2017 hearing, be turned over to the [Trustees] forthwith.

## DISCUSSION

### *The Court's Rulings on Discovery Are Discretionary*

Despite Trustee Herendeen's contention that "[i]t is not for the Court to tell Trustee how to try her case, including which documents will or won't be helpful in proving up her case-in-chief, or rebutting Region Bank's 'good faith' defense," it is the proper role of this Court to rule on discov-

---

16. Doc. No. 240.

17. The additional documents requested by the Court were described in Priv_0011680–27 to Priv_0011680–30.

18. Transcript, Doc. No. 276, p. 84.

19. Doc. No. 289, p. 13.

20. Doc. No. 289, p. 14.

21. Doc. No. 288.

ery matters consistent with the dictates of Rule 26.

 As the Eleventh Circuit Court of Appeals has recently affirmed, a trial court has wide discretion in discovery matters. As the court stated in *Arthur v. Commissioner, Alabama Department of Correction*: [22]

> A district court has wide discretion in discovery matters and our review is "accordingly deferential." A court abuses its discretion if it makes a "clear error of judgment" or applies an incorrect legal standard. Moreover, a district court's denial of additional discovery must result in substantial harm to a party's case in order to establish an abuse of discretion.

This discretionary standard is particularly appropriate in light of the 2015 amendments to Federal Rule of Civil Procedure 26, incorporated by Federal Rule of Bankruptcy Procedure 7026, which limits the scope of discovery. Rule 26(b) permits discovery:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case,* considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information,* the parties' resources, *the importance of the discovery in resolving the issues,* and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of

discovery need not be admissible in evidence to be discoverable. [23]

And Rule 26(b)(2)(C) directs the Court, on motion or its own, to limit the frequency or extent of discovery if it finds that the discovery sought is unreasonably cumulative or duplicative.

### *The Attorney–Client and Work–Product Privileges*

 The attorney-client privilege protects from disclosure confidential documents and communications between a client and the client's attorney that were made for the purpose of obtaining or rendering legal advice. [24] The fundamental purpose of the attorney-client privilege is to foster open and complete communications between an attorney and client. [25] The attorney-client privilege applies to a communication if it was made between an attorney and his client and is: "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." [26] The party who asserts the privilege bears the burden of demonstrating that the privilege applies.

 The work-product privilege is derived from the Supreme Court's ruling in *Hickman v. Taylor* [27] and is codified in Federal Rule of Civil Procedure 26(b)(3). In *Hickman,* the Supreme Court found that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." The work-product priv-

---

**22.** 840 F.3d 1268, 1304 (11th Cir. 2016) (citing *Bradley v. King,* 556 F.3d 1225, 1229 (11th Cir. 2009)).

**23.** (Emphasis supplied.)

**24.** *Upjohn Co. v. United States,* 449 U.S. 383, 399, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981).

**25.** *United States v. Noriega,* 917 F.2d 1543, 1550 (11th Cir. 1990).

**26.** *Id.* at 1550 (quoting *United States v. Bell,* 776 F.2d 965, 971 (11th Cir. 1985) (emphasis in original) ).

**27.** 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

ilege protects from discovery "materials that reflect an attorney's mental impressions, conclusions, opinions, or legal theories" that were prepared in anticipation of litigation and intended to remain confidential.[28] The privilege includes an attorney's notes and memoranda.[29]

■■■■■■ Under Rule 26(b)(3), "opinion work product cannot be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship."[30] The party claiming the protection has the burden to demonstrate the applicability of the work-product doctrine.[31] Federal courts look to state law to determine the extent of the privilege.[32] The privilege is not absolute. Waiver of either privilege can occur if the holder of the privilege asserts a claim or affirmative defense that puts the privileged matter directly at issue.[33] A party asserting waiver of either the attorney-client or work-product privilege bears the burden of establishing the waiver of the privilege.[34]

### *The "At Issue" Doctrine*

■■■■ The "at issue" doctrine rests on the principle of fairness[35] and stems from the premise that the attorney-client privilege cannot be used as both a sword and a shield.[36] A waiver of the privilege can occur when a party seeks to use the privilege to prejudice the opposing party's case[37] and in fairness requires an examination of otherwise protected communications.[38]

Here, the parties agree that the elements of waiver under the "at issue" doctrine are as described by the court in *Stern v. O'Quinn.*[39] In *O'Quinn*, the court held that under the "at issue" doctrine, a party may be found to have waived the privilege when:

(1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense.[40]

In Florida, the "at issue" doctrine has been applied to waive the attorney-client privilege where "a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require

**28.** *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421–22 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977)); *cf. Hickman*, 329 U.S. at 511, 67 S.Ct. at 393; *Upjohn*, 449 U.S. at 399, 101 S.Ct. at 687.

**29.** *Upjohn*, 449 U.S. at 399–400, 101 S.Ct. at 687–88.

**30.** *Cox*, 17 F.3d at 1422 (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977).

**31.** *Stern v. O'Quinn*, 253 F.R.D. 663, 674 (S.D. Fla. 2008) (citing *U.S. v. Moore*, 485 F.2d 1165, 1166 (5th Cir.1973)).

**32.** *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (finding that "Federal Rule of Evidence 501

directs that this Court look to Florida law as to the attorney-client privilege.").

**33.** *In re Gibco, Inc.*, 185 F.R.D. 296, 300 (D. Colo. 1997).

**34.** *MapleWood Partners*, 295 F.R.D. at 584.

**35.** *Id.* at 624.

**36.** *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

**37.** *Id.* at 1292.

**38.** *Cox*, 17 F.3d at 1419.

**39.** 253 F.R.D. 663, 676 (S.D. Fla. 2008).

**40.** *O'Quinn*, 253 F.R.D. at 676.

that the privileged matter be offered in evidence."[41] The Eleventh Circuit has found that a waiver of the attorney-client privilege under Florida law may occur when a party affirmatively injects a privileged communication directly into the litigation, as necessary to prove an element of a claim or defense.[42] Similarly, other courts have found the doctrine applicable where the privileged materials were the only means to "combat or otherwise test the veracity of [d]efendants' defenses that [defendant-lawyer] acted in good faith and did not entertain serious doubts as to the veracity of the matters allegedly stated or purposefully avoid learning of the truth."[43]

### Regions' Affirmative Defense of "Good Faith"

Under 11 U.S.C. § 548, a bankruptcy trustee may avoid a transfer of a debtor's interest in property, made within two years of the bankruptcy petition, if the transfer was made with the intent to hinder, delay, or defraud creditors, and was made while the debtor was insolvent.[44] To avoid a transfer under § 548, the trustee must establish that either the transfer was made with actual fraudulent intent or that the transfer was constructively fraudulent. The trustee bears the burden of proof by a preponderance of the evidence.

 However, § 548(c) carves out an exception if the transferee has taken the transfer in good faith and for value. To establish a "good faith" defense, the transferee bears the burden of showing that it gave value in exchange for transfer and accepted transfer in good faith.[45] Although the Bankruptcy Code does not define good faith, whether a transferee acted in good faith is a factual determination that courts must make on a case-by-case basis.[46] Among its other defenses, Regions has asserted the affirmative defenses of good faith in its seventh and twelfth affirmative defenses.[47]

### Application of the "At Issue Doctrine"

Many cases apply the "at issue" doctrine in fact patterns not analogous to the present case. Because of the similarity of the claims involved, the Court finds the case of *In re Gibco, Inc.*, to be both persuasive and instructive.[48]

In *Gibco*, creditors obtained a substantial judgment against the debtor, Gibco, and its principals. Before the judgment was entered, one of Gibco's principals retained an attorney to draft a quitclaim deed to convey two parcels of property owned by Gibco to the principal for no consideration other than the assumption of the debt encumbering the parcels. The attorney also assisted the principal in reconveying the parcels back to Gibco, also without consideration, and, ultimately, to re-transfer Lot 12 to a new purchaser.

41. *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So.2d 504, 508 (Fla. 2d DCA 2006) (quoting *Savino v. Luciano*, 92 So.2d 817, 819 (Fla. 1957)).

42. *GAB Bus. Servs. Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) (reversing lower court that failed to permit discovery into issue raised by party, as the attorney-client privilege is intended to be applied "as a shield, not a sword" and a party may not use the privilege to prejudice an opponent's case).

43. *O'Quinn*, 253 F.R.D. at 676.

44. 11 U.S.C. § 548.

45. *In re O'Neill*, 550 B.R. 482, 501 (Bankr. D.N.D. 2016).

46. *In re Grueneich*, 400 B.R. 688, 693 (8th Cir. B.A.P. 2009) (citing *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir.1995)).

47. Doc. No. 160, pp. 24, 26.

48. 185 F.R.D. 296 (D. Colo. 1997).

Gibco's bankruptcy trustee sued the principal to avoid the transfer as a preferential and fraudulent transfer, and sought the production of documents related to the transfer of Lot 12. The principal claimed that the documents were privileged and not subject to production. But, the court found that the principal's "subjective knowledge and intent in arranging the lot 12 transfer [was] directly relevant to a determination of the validity of his good faith affirmative defense" and that "[b]y asserting the affirmative defense of good faith, [principal] has put both the objective circumstances, and his subjective knowledge and intent at issue." [49]

The Gibco court reasoned that the documents at issue were the "most probative, if not the only, documentary evidence which would tend to show the information available ... when the transfer was under consideration, and [principal's] motive for the transfer." [50] The court also found that if the trustee were not permitted to review the documents, the principal would be free to state his version of the facts, while the trustee would be without any means to examine other evidence that would corroborate or contradict the principal's statements. The Gibco court concluded by stating that "to the extent the documents at issue are relevant to determining [defendant's] knowledge and intent with regard to the lot 12 transfer, he has waived the attorney client and work product privileges by asserting the affirmative defense of good faith." [51]

In other words, the Gibco court found, first, that the subject documentary evidence was the "most probative, if not the only" evidence of the defendant's knowledge at the relevant time period; second, that the trustee would be prejudiced if he were unable use that documentary evidence to corroborate or contradict the principal's testimony; and third, that the privileges had been waived to the "extent that the documents at issue are relevant" to the issues. Notably, the Gibco court did not find a blanket waiver of the attorney-client or work-product privilege such that every document for which a privilege had been asserted was required to be produced.

In her Supplemental Memorandum, Trustee Herendeen requests that the Court review Hearn v. Rhay,[52] as the "seminal case on the 'at issue' exception." [53] Trustee Herendeen cites the Hearn case in support of her contention that once the Court has determined that a waiver of the attorney-client and work-product privileges occurred, "all emails that the Court reviewed in camera are due to be turned over to the Trustee." [54]

In Hearn, the court recognized a narrow exception to the attorney-client privilege that applies in civil rights suits where a defendant asserts the affirmative defense of good faith and holds that the waiver only applies to circumstances where the "application of the privilege would [deny] the opposing party access to information vital to his defense." [55] Hearn does not stand for the proposition that upon a court's finding of waiver, all documents claimed as privileged must be produced. Instead, Hearn limits the waiver to documents that "relate to the issues of malice toward plaintiff or knowledge of plaintiff's

---

49. *Id.* at 301.

50. *Id.*

51. *Id.* (emphasis supplied.)

52. 68 F.R.D. 574 (E.D. Wash. 1975).

53. Doc. No. 288, p. 6.

54. Doc. No. 288, p. 5.

55. *Hearn,* 68 F.R.D. at 581.

constitutional rights."[56] Trustee Herendeen's argument that the Court's inquiry is over once it has made the determination that the "at issue" doctrine applies and waiver occurred is not supported by *Hearn*; for example, the court in *Hearn* recognized that documents, even if relevant, may be protected from production where the plaintiff does not have a particularly compelling case.[57]

■ Here, consistent with *Gibco* and *Hearn*, the Court finds that Regions has injected the issue of good faith into these proceedings by asserting good faith as its affirmative defense under § 548(c). As the Court advised the parties at the April 5, 2017 hearing, the Court has not found a blanket waiver of the attorney-client and work-product privileges; rather the Court finds that only those documents or communications that bear on Regions' state of mind during the relevant time period are subject to production. The question then before the Court is whether the subject documentary evidence is the "most probative, if not the only" evidence of Regions' state of mind, knowledge, and intent during the relevant time periods.

### Analysis of the Court's In Camera Inspection

When this Court deferred ruling on the application of the "at issue" doctrine, it ruled, in its discretion, against a blanket waiver requiring production of all withheld documents by Regions. Instead, consistent with the *Gibco* analysis, the Court undertook to review Regions' documents, *in camera*, to make the following determinations:

(1) Whether Regions' assertions of attorney-client and work-product privilege were appropriate;

(2) Whether the subject documents are relevant to the issue of Regions' knowledge and intent prior to freezing the Accounts and effectuating the set off; and

(3) Whether, as found in *Gibco*, the subject documents are the "most probative, if not the only" evidence of Regions' knowledge and intent at the time that it froze the Accounts and effectuated the set off, such that the Trustees would be prejudiced if they were not permitted to review them.

Having reviewed, hundreds of documents, the Court makes the following findings:

### 1. Whether the Attorney–Client and Work–Product Privileges Apply

■ The Court finds that, with few exceptions, the attorney-client and work-product privileges were properly asserted by Regions. Courts generally agree that the attorney-client privilege in the corporate context applies only to communications made for the purpose of obtaining legal advice.[58] With that in mind, the fact that an attorney is copied with a written communication among non-lawyers does not make the communication privileged.[59] And documents that serve both business and legal functions are not protected communications.[60] Similarly, communications

---

**56.** *Id.* at 582.

**57.** *Id.*

**58.** *In re Fundamental Long Term Care, Inc.*, 509 B.R. 387, 395 (Bankr. M.D. Fla. 2014).

**59.** *Tyne v. Time Warner Entm't Co., L.P.*, 212 F.R.D. 596, 600 n.4 (M.D. Fla. 2002); *see also Minebea Co. v. Papst*, 228 F.R.D. 13, 21

(D.D.C. 2005) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.") (quoting *USPS v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 163–64 (E.D.N.Y.1994)).

**60.** *In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d 789, 805 (E.D. La. 2007).

between counsel and opposing counsel or that merely relay information that has been communicated to opposing counsel are not privileged.[61] And finally, retention agreements that do not reveal client communications are not privileged.[62]

For these reasons, the Court finds that the following documents are neither privileged as attorney-client communications nor privileged as work product and are subject to production: Bates-stamp numbers Priv_00005522, Priv_00005527, Priv_00005237, Priv_00000048, Priv_00002877, Priv_00005189-2, Priv_00000505, Priv_00000780, Priv_00005184, Priv_00005177, and Priv_00011604-1.

In addition, the Court has reviewed the two additional documents it requested from Regions at the March 8, 2017 hearing. One of the documents, Bates-stamp number FRAN0000012689, does not appear to be relevant to the Mongelluzzis or the Entities. However, it is not protected by the attorney-client or work-product privileges, and if responsive to a discovery request, is subject to production.

> 2. *Whether the reviewed documents are relevant and the "most probative, if not the only" evidence of Regions' knowledge and intent such that the Trustees would be prejudiced if they were not permitted to review them.*

The Court initially identified a number of otherwise privileged documents[63] that are remotely relevant to the issue of Re-

gions' good faith defense. This is because the documents relate to the events that give rise to the Trustees' claims. However, under the "at issue" doctrine, the attorney-client and work-product privileges are waived only as to those documents which relate to state of mind. The Court finds that most of the documents do not evidence Regions' state of mind. Therefore, they are not subject to production.

However, the Court has identified certain documents that relate directly to, and are the "most probative, if not the only" evidence of, Regions' state of mind during the relevant time periods. The Trustees could be prejudiced if they are not permitted to review these documents. Therefore, the Court will direct their production.

In addition, upon review of Regions' *Supplemental* In Camera *Submission* dated March 27, 2017 (represented by Regions to be 153 documents listed as privileged on its Amended Privilege Log dated September 20, 2016, that were inadvertently omitted from inclusion in the January 17, 2017 submission), the Court identified six documents that directly relate to Regions' state of mind in July 2010, prior to Regions' set off against the Accounts.[64] Finally, one of the documents produced by Regions in response to the Court's request at the March 8, 2017 hearing, Bates-stamp number Priv_00011517, arguably relates to Regions' state of mind in December 2009. The Court will order Regions to produce these documents.

---

**61.** *In re PWK Timberland, LLC,* 549 B.R. 366, 374 (Bankr. W.D. La. 2015).

**62.** *See Kaplan v. Kaplan,* 2012 WL 995202, at *3 (M.D. Fla. Mar. 23, 2012).

**63.** Of the 244 total documents identified by the Court, 119 documents were withheld by Regions from production as privileged and 125 documents contained redacted informa-

tion. The Bates-stamp numbers of these documents are attached as Exhibit A to this Amended Order.

**64.** At a later time, the Court may be called upon to consider the circumstances which led to Regions' "inadvertent" failure to include these six documents in its January 17, 2017 submission to the Court.

To summarize, the Court will order Regions to produce all documents reviewed by the Court that the Court finds to be relevant to Regions' good faith defense, that is, relevant to Regions' knowledge, intent and state of mind during the relevant time periods.

### 3. Documents Subject to Production

In conclusion, based upon the above analysis, the Court finds that the following documents are subject to production as follows:

(a) The following documents are not privileged:

Bates-stamp numbers Priv_00005522, Priv_00005527, Priv_00005237, Priv_00000048, Priv_00002877, Priv_00005189–2, Priv_00000505, Priv_00000780, Priv_00005184, Priv_00005177, Priv_00011604–1, and FRAN0000012689.[65]

(b) The attorney-client and work-product privileges are waived as to and the following documents are likely the "most probative, if not the only" evidence of Regions' knowledge, intent, and state of mind, such that they are subject to production:

(1) From Regions' January 20, 2017 submission to the Court for *in camera* review:

Bates-stamp numbers Priv_00006255, Priv_00000779, Priv_00000624, Priv_00000625, Priv_00000626, Priv_00000622, Priv_00000620, Priv_00005253, Priv_00005260, Priv_00005252, Priv_00005254, Priv_00005264, Priv_00005255, Priv_00005256, Priv_00005257, Priv_00005259, Priv_00005258, Priv_00012596–64 through Priv_00012596–69, Priv_00003836, Priv_00003846, Priv_00003850, Priv_00003851, Priv_00004641, Priv_00004647, Priv_00004648, Priv_00004654, Priv_00005234, Priv_00000841, Priv_00005365, Priv_00002876, Priv_00002589, Priv_00000041, Priv_00005223, and Priv_00005216.

(2) From Regions' March 27, 2017 submission to the Court for *in camera* review:

Bates-stamp numbers Priv_00000597, Priv_00000598, Priv_00000599, Priv_00000767, Priv_00000578, and Priv_00004939.

(3) From Regions' submission at the Court's request at the March 8, 2017 hearing:

Bates-stamp number Priv_00011517.

Accordingly, it is

**ORDERED:**

1. Regions shall forthwith serve the above-described documents on counsel for the Trustees.

2. Regions shall supplement its Amended Privilege Log to accurately reflect those documents which are withheld from production.

3. The Court reserves jurisdiction to impose sanctions against Regions if it determines Regions has willfully failed to comply with this Court's previous discovery orders.

---

**65.** If relevant to the case, FRAN0000012689 should be produced.